IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MFS, INC.,  :  |   |
|     Plaintiff,  : |   |
| : | CIVIL ACTION NO. 1:05-CV- 1371 |
| v.  : |   |
| : | (Chief Judge Kane) |
| : |   |
| TOWNSHIP OF SOUTH  : |   |
| ANNVILLE, et al.,  : |   |
|     Defendants.  : |   |

**MEMORANDUM**

      Plaintiff MFS, Inc. ("MFS") is a Pennsylvania corporation that owns approximately 500 acres of land in South Annville Township, Lebanon County, Pennsylvania.  Defendants include the Township of South Annville ("Township"), the Township of Annville Authority ("Authority"), the Township's Board of Supervisors ("Board"), Board Members Umberber, Hoover, Horst, and Heagy ("Individual Defendants"), Steckbeck Engineering & Surveying, Inc., and Jeffrey Steckbeck.  MFS alleges that Defendants individually and collectively engaged in a series of retaliatory measures in violation of the First Amendment and the Pennsylvania Constitution after MFS exposed the Township's failure to comply with state law obligations to regulate the control of sewage.  Pending before this Court is a motion to dismiss MFS's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the Township, Authority, Board, and the Individual Defendants (collectively, "Annville Defendants").[1]  For the following reasons, the motion will be granted in part and denied in part.

---

      [1] Defendants Steckbeck Engineering & Surveying, Inc. and Jeffrey Steckbeck did not join in the instant motion.

**I.     Background**[2]

Under the Pennsylvania Sewage Facilities Act, Act of 1965, P.L. 1535, No. 537 ("Act 537"), adopted on January 24, 1966, townships within the Commonwealth are required to develop and implement sewage-treatment plans and construct sewage-treatment systems to service properties within their boundaries.  According to the complaint, the Township has never complied with Act 537 or created such a plan.  In 1999, MFS unveiled its plans to develop an industrial park on 500 acres of property located in the Township of South Annville, 400 acres of which was zoned for industrial use.  MFS's 400 acres are the only land in the Township zoned for industrial use.  Because the Township had not implemented a sewage-treatment plan, MFS submitted its own proposed plan to the Pennsylvania Department of Environmental Protection ("PaDEP") as part of its development program.  The PaDEP thereafter notified MFS that only municipalities are authorized to submit sewer plans for approval.  MFS then petitioned the PaDEP and other government officials to compel the Township to submit a sewer plan that included MFS's property.

On September 26, 2000, the PaDEP directed the Township to submit a Sewage Facilities Act Plan Update ("Act 537 Plan Update")[3] that would provide sanitary-sewer services to MFS's property.  Thereafter, on or about October 12, 2000, the Board announced that it would discuss a possible inter-municipal agreement with Annville Township, whereby Annville Township would provide sewage services to South Annville Township.

---

[2] For the purposes of evaluating the pending motion to dismiss, the Court accepts as true all well-pleaded allegations contained in the complaint.

[3] Although designated an "Update," the complaint alleges that no such plan was ever in place, as the Township was not in compliance with Act 537.

In 2001, MFS learned that the Board had been holding nonpublic meetings for the purpose of drafting revisions to the Township's zoning regulations to make them more restrictive.  Later that year, the Board passed the new zoning regulations over MFS's objections.  These regulations focused primarily on industrial-zoned property.  MFS alleges that these regulations targeted MFS's property (as MFS owned the only land in the Township zoned industrial) and were passed so as to retaliate against MFS for petitioning the PaDEP to enforce the Township's obligations under Act 537.

MFS further alleges that Defendants continue to engage in retaliatory conduct in pursuing the development of the sewer service required by the PaDEP.  Specifically, MFS alleges that Defendants' proposed "Act 537 Plan Update" would create a separate, more expensive sanitary-sewer service area for MFS than that created for all remaining property owners.  MFS also alleges that the Act 537 Plan Update fails to provide or reserve sufficient sewer capacity for MFS.  Finally, MFS alleges that Defendants continue to present it with an unreasonable and unfair developer's agreement in connection with the Act 537 Plan Update and have disseminated false information about MFS to the public.

MFS filed this civil action on July 7, 2005.  (Doc. No. 1.)  On September 12, 2005, the Annville Defendants filed the instant Motion to Dismiss (Doc. No. 18.) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The parties have fully briefed and argued the motion (Doc. Nos. 19, 27, 30).  The motion is ripe for disposition.

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly granted when, taking all factual allegations as true, the moving party is entitled to

judgment as a matter of law. Markovitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). When considering a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff. United States Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). Morever, given the early stage of the proceedings, the Court should not "inquire whether the plaintiffs will ultimately prevail." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Rather, the Court should only inquire as to "whether [the plaintiffs] are entitled to offer evidence to support their claims." Id.

## III. DISCUSSION

MFS asserts four claims in its complaint: first, that Defendants unlawfully retaliated against MFS for exercising its First Amendment right to petition the government (Count I); second, that Defendants conspired to deprive MFS of its federal constitutional rights (Count II); third, that Defendants acted in violation of the Pennsylvania Constitution (Count III); and, fourth, that Defendants conspired to deprive MFS of its rights in violation of the Pennsylvania Constitution (Count IV). The Annville Defendants argue that MFS's complaint should be dismissed in part because MFS's claims are barred by the applicable statute of limitations, that Defendants are entitled to legislative immunity, and that MFS's claims are not ripe for disposition. These arguments are addressed in turn.

### A. MFS's claims relating to the amended zoning ordinances are time-barred under a two-year statute of limitations.

In their motion to dismiss, the Annville Defendants argue that MFS's § 1983 claim is barred by the applicable statute of limitations. Although § 1983 does not itself specify a limitations period, the Supreme Court has directed federal courts to apply the forum state's

statute-of-limitations period for personal-injury claims. Wilson v. Garcia, 471 U.S. 261, 276 (1985). Accordingly, in Pennsylvania the applicable statute of limitations for § 1983 claims is two years. Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).

In its complaint, MFS identifies two retaliatory measures employed by the Annville Defendants: (1) the 2001 approval of "restrictive and complex revisions to South Annville's industrial zoning ordinance and regulations" (Doc. No. 1, ¶¶ 25-26), and (2) the "on-going efforts to retaliate against MFS . . . so as to further obstruct the development of [MFS's] property" through the adoption of the Act 537 Plan Update (Doc. No. 1, ¶ 28).

Defendants do not dispute that the allegedly retaliatory efforts related to the Act 537 Plan Update occurred within the two-year limitations period. The narrow issue therefore is whether Plaintiff's claims related to the 2001 amendments to the zoning ordinances are timely. Because the complaint was filed nearly four years after the alleged retaliation occurred, those claims are untimely.

MFS argues that its claims arising out of the 2001 amendments to the Township's zoning ordinances should nevertheless be revived under the equitable "continuing-violations" doctrine. This argument is unavailing. The continuing-violations doctrine applies where "a defendant's conduct is part of a continuing practice." Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). Where an otherwise untimely action is based upon a continuing practice, a court will make an exception "so long as the last act evidencing the continuing practice falls within the limitations period." Id. The doctrine is a narrow exception to the filing requirement, and courts must focus on the "affirmative acts of the defendants." Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001).

When determining whether to apply the doctrine, the Third Circuit has identified three factors that courts should consider:

> (1) subject matter -- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence -- whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id. at 292 (internal citations omitted) (emphasis added). The Third Circuit has further instructed that "[t]he consideration of 'degree of permanence' is the most important of the factors." Id.

In weighing the first factor, the Court distinguishes the amended zoning ordinance from the Act 537 Plan Update. Although both activities relate to land-use, affect Plaintiff's property, and are allegedly retaliatory, the similarities end there. Most critically, while the zoning ordinance deals with MFS's use of industrial-zoned property, the Act 537 Plan Update deals with sewage treatment more generally throughout the Township. Moreover, whereas the manner by which zoning ordinances are amended is governed by local initiatives, the Act 537 Plan Update process is mandated by state law. Accordingly, after considering the subject matter of Defendants' actions, the first factor weighs against applying the continuing-violations doctrine.

When applying the second factor – the frequency of the acts – the Third Circuit has indicated that no "specific standard [exists] for determining how close together the acts must occur to amount to a continuing violation." Id. at 295. Based on the facts alleged in the complaint, the Court finds that this factor does not substantially weigh either for or against the application of the continuing-violations doctrine.

Finally, the third factor – the "degree of permanence" – weighs heavily against applying

the continuing-violations doctrine in this case. When addressing this factor, the Third Circuit has cautioned courts that the "continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Id. Thus, "if prior events should have alerted a reasonable person to act at that time the continuing violation theory will not overcome the relevant statute of limitations." King v. Twp. of E. Lambert, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998). In this case, because the alleged retaliation should have been apparent to MFS upon passage of the amended zoning ordinance in 2001, the statute of limitations began running against Plaintiff at that time. Once the Annville Defendants allegedly retaliated against MFS, it was incumbent on MFS to seek relief within the prescribed limitations period, and the failure to do so cannot be saved by application of the continuing-violations doctrine.

### B. The Individual Defendants are absolutely immune from suit for damages with respect to their legislative activities.

The Individual Defendants also argue that they are entitled to absolute legislative immunity for actions taken in the development of the Act 537 Plan Update. The doctrine of legislative immunity bars, inter alia, damages suits under § 1983 against "members of a municipal council acting in a legislative capacity." Aitchison v. Raffiani, 708 F.2d 96, 99 (3d Cir. 1983).

Key to the legislative-immunity doctrine is a determination by the Court that the activities of the legislators were, in fact, legislative in nature. Ryan v. Burlington County, 889 F.2d 1286, 1290 (3d Cir. 1989). Immunity is not available if the legislators were acting "ministerially," Abraham v. Pekarski, 728 F.2d 167, 174 (3d Cir. 1984), and immunity is not available when legislators act outside of their legislative duties. Ryan, 889 F.2d at 1291-92.

This Court must apply a two-prong test for determining whether a municipal legislator's action is "legislative" for the purposes of absolute immunity: "(1) the action must be 'substantively' legislative, which requires that it involve a policymaking or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 172 (3d Cir. 2006) (quoting Acierno v. Cloutier, 40 F.3d 597, 610 (3d Cir. 1994) (en banc)).

Under the first prong, a court must determine whether a legislator's action involves policymaking. Although MFS argues that the Individual Defendants merely "appl[ied] an existing state law (Act 537) with the intention of depriving MFS of its constitutional rights" (Doc. No. 27, at 14), Defendants' actions plainly required the line-drawing necessary to be characterized as substantively legislative. Cf. Ancierno, 40 F.3d at 612-13 (holding that a county council's decision to rezone pursuant to delegated powers may be substantively legislative). Indeed, MFS readily acknowledges that the Individual Defendants have taken into account several policy considerations, such as: "attempt[ing] to create two distinct sanitary sewer service areas in South Annville"; "designing the collection lines for the sanitary sewer system so that the lines would stop far short of [MFS's] property"; and "changing [the Act 537 Plan] so as to go to Lebanon City for its sanitary sewer needs instead of to Annville Township." (Doc. No. 1, ¶ 30.)

Moreover, when analyzing the first prong, courts can look to whether the activity affects the entire community or a small number of individuals. County Concrete, 442 F.3d at 172. If the policy affects the community at large, it is more likely than not that the activities are substantively legislative. Id. On a Rule 12(b)(6) motion to dismiss, if "it is not clear from the face of the complaint that the Ordinance only affects [a plaintiff's] property" the Court will find

the Township's actions to be substantively legislative. Id. (emphasis in original). In this case, MFS argues that it will bear most of the burden of the Township's choices. However, MFS has not alleged that it is the only party affected by Defendants' actions. Accordingly, the Court finds that the Individual Defendants' actions satisfied the first prong.

Under the second prong, MFS does not allege that the Individual Defendants developed the Act 537 Plan Update "in a manner contrary to statutory procedures specified for such action." Id. (internal citations omitted). Nor does MFS allege that the Individual Defendants acted outside the scope of their duties in the Act 537 Plan Update process. MFS alleges only that the Individual Defendants acted with improper motives. Based on the allegations contained within the complaint, therefore, the Court finds that Defendants' activities were procedurally legislative. With both prongs satisfied, the Court finds that Defendants are entitled to legislative immunity for actions in updating the Act 537 plan. Although the Individual Defendants' conduct in "implementing its Act 537 Plan Update" entitles them to legislative immunity, there remain allegations of wrongful conduct that are not protected by legislative immunity  For example, MFS alleges that Defendants "repeatedly disseminated and continue to disseminate to the local newspapers, to state officials and/or to the public false information about MFS'[s] position with respect to both the sanitary sewer project and the proposed developer's agreement relating to the project." (Doc. No. 1, ¶ 30(D).) Such activities are not immune under the doctrine of legislative immunity.[4]

---

[4] The Court notes that the complaint is not an exemplar of clarity with respect to what has actually been done in South Annville. However, at this stage in the proceedings, the Court finds that with all inferences favoring MFS, the Individual Defendants have not established that they are entitled to absolute immunity from all of MFS's claims.

### C. MFS has stated a claim upon which relief can be granted.

At its core, this dispute concerns allegations of "an on-going scheme to thwart MFS'[s] development of highly valuable land in South Annville." (Doc. No. 27, at 11.) Although Plaintiff challenges the decisions of the Township regarding land-use, it does not frame it as a traditional land-use dispute. Rather, MFS's theory is that the actions of the Township of South Annville were retaliatory and violated MFS's First Amendment rights.

Unlike substantive due process violations, the injury in a First Amendment retaliation claim is not the ex ante deprivation of a constitutional right. Rather, "[t]he reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." Crawford-El v. Britton, 523 U.S. 574, 589 n.10 (1998). Thus, "the key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Thomas v. Independence Twp., No. 05-2275, slip op. at 14 (3d Cir. Sept. 14, 2006) (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)).

In the land-use context, the Third Circuit has recognized a cause of action for First Amendment retaliation. In Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), the plaintiffs claimed violations of their First Amendment, substantive due process, equal protection, and state-law rights when zoning officials:

> [A]pplied subdivision requirements to their property that were not applied to other parcels; . . . pursued unannounced and unnecessary inspection and enforcement actions; . . . delayed certain permits and approvals; . . . improperly increased tax assessments; and . . . maligned and muzzled the Eichenlaubs.

385 F.3d at 286. Although the court rejected the plaintiffs' substantive due process claims, the

Third Circuit upheld the plaintiffs' equal protection, state law, and the First Amendment retaliation claims.[5] After Eichenlaub, a township's land-use decision is plainly actionable as a First Amendment retaliation claim brought under § 1983, even if the township's conduct does not rise to the level of a substantive due process violation.

More recently, the Third Circuit in Thomas, reaffirmed that a First Amendment claim can survive a 12(b)(6) motion to dismiss where a complaint alleged that the

> Individual Defendants have engaged in a campaign of harassment and intimidation in retaliation against plaintiffs for exercising their First Amendment rights [and that] the retaliatory action has chilled plaintiffs' speech and discouraged them from seeking judicial redress.

Thomas, slip op. at 14-15. In the case sub judice, MFS has made similar allegations. (Doc. No. 1, ¶¶ 40-42.)

To plead a valid First Amendment retaliation claim, a plaintiff must allege three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas, slip op. at 14. Here, MFS has sufficiently pleaded each of the elements. Under the first element, it is undisputed that MFS had a protected First Amendment right to petition the government for redress of its grievances.

Under the second element, the test for First Amendment retaliation ultimately turns on both the subjective intent of the government actor and an objective standard as to whether such

---

[5] Notably, the jury found for plaintiff Eichenlaub on his First Amendment claim on remand. Eichenlaub v. Twp. of Indiana, No. 2:99-CV-01607 (W.D. Pa. Mar. 4, 2005) (Doc. No. 221).

retaliation is sufficiently "chilling." At this stage in the proceedings, it is enough that MFS has alleged both that Defendants acted with improper motives and that a person of ordinary firmness would be deterred from further exercising her constitutional rights. In this case, MFS has alleged that the Act 537 Plan Update process is, in essence, an ongoing punishment for MFS's whistle-blowing on the Township's failure to comply with its obligations under Act 537. Based on these allegations, the Court is satisfied that MFS has alleged sufficient facts to support a claim that Defendants' actions would have the effect of deterring a person of ordinary firmness from exercising her First Amendment rights.

Finally, under the third element, the Court finds that MFS has sufficiently alleged that Defendants' course of action was taken in direct retaliation for MFS's petitioning the PaDEP. Specifically, MFS alleges that after the PaDEP ordered the Township to fulfill its Act 537 obligations, Defendants retaliated by proposing an Act 537 Plan Update that would punish MFS by imposing comparatively high costs.

Taking all inferences in favor of the Plaintiff, the Court finds that MFS has stated a First Amendment retaliation claim.

### D. The Court is unable to discern whether MFS's claims are ripe for adjudication.

The Annville Defendants also argue that certain of MFS's claims are not ripe for adjudication. For example, the Annville Defendants contend that:

> Plaintiff merely asserts that the Defendants attempted to create two sewer service areas. There is no allegation in the Complaint that the Township did in fact do so. Therefore, this claim is not ripe.

(Doc. No. 19, at 10.) MFS argues in opposition that it "is not asserting claims for substantive violations of Act 537. Rather, MFS is asserting claims for constitutional retaliation and is

seeking injunctive relief to enjoin these Defendants from retaliating against MFS in the future . . . ." (Doc. No. 27, at 24.)

Because the scope of Defendants' activities, and to what extent they have already occurred, is not clear from the pleadings the Court cannot determine whether Defendants' ripeness objection is meritorious.  Given the liberal pleading requirements under the Federal Rules of Civil Procedure, the Court will defer ruling on ripeness.  See Fed. R. Civ. P. 8(a). Nevertheless, with concerns of justiciability in mind, the Court will order, sua sponte, MFS to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) so that Defendants may reassert any arguments related to ripeness and raise any available immunity defenses.  Cf. Thomas, slip op. at 19 (remanding to the District Court "with instructions to order plaintiffs to file a more definite statement under Rule 12(e) so the Individual Defendants may reassert, and the District Court may reconsider, the qualified immunity issue in light of the factual context of this case.").

### E. The Court will not decline to exercise supplemental jurisdiction over MFS's state constitutional claims.

In its complaint, MFS has also alleged two counts for violations of the Pennsylvania Constitution.  This Court has the power to exercise supplemental jurisdiction of these state-law claims pursuant to 28 U.S.C. § 1367(a).  Where a claim raises a "novel or complex issue of State law," a court may, in its discretion, decline to exercise such jurisdiction.  28 U.S.C. § 1367(c)(1); De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311-12 (3d Cir. 2003).

In this case, the issue of whether monetary damages are available for violations of the Pennsylvania Constitution remains unresolved by Pennsylvania courts.  Defendants argue that this Court should decline to exercise supplemental jurisdiction over claims for monetary

damages pursuant to 28 U.S.C. § 1367(c)(1).  See Laughman v. Pennsylvania, 2006 U.S. Dist. LEXIS 15841, at *26-29 (M.D. Pa. Mar. 17, 2006); Stambaugh's Air Serv., Inc. v. Susquehanna Area Reg'l Airport Auth., 2006 WL 709229, at *3 (M.D. Pa. Mar. 16, 2006).  Although the availability of monetary damages under the Pennsylvania constitution has not been addressed by the Pennsylvania Supreme Court,[6] this Court will not decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.  Because Plaintiff states a claim for non-monetary relief,[7] considerations of judicial economy weigh against dismissing Plaintiff's claim for monetary relief.  Christie v. Borough of Folcroft, 2005 WL 2396762, at *13 (E.D. Pa. 2005).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss MFS's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) will be granted in part and denied in part.  An appropriate order follows.

---

[6] On October 25, 2006, the Pennsylvania Supreme Court denied without opinion a petition for allowance of appeal of the Pennsylvania Commonwealth Court decision in Jones v. City of Pennsylvania, 890 A.2d 1188 (Pa. Commw. Ct. 2006).  PA Supreme Court Docket Number 95 EAL 2006.

[7] Defendants argue that injunctive relief is inappropriate because "Act 537 sets forth a detailed scheme through which Plaintiff can challenge any actions by the Township in developing the Act 537 Plan and prosecute its civil remedies.  See 35 P.S. § 750.12." (Doc. No. 19, at 13.)  However, Plaintiff is not seeking relief under Act 537, nor does the civil remedy identified by Defendants provide a private cause of action.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MFS, INC.,** : | |
|     **Plaintiff,** : | |
| : | **CIVIL ACTION NO. 1:05-CV- 1371** |
| v. : | |
| : | **(Chief Judge Kane)** |
| : | |
| **TOWNSHIP OF SOUTH** : | |
| **ANNVILLE, et al.,** : | |
|     **Defendants.** : | |

## ORDER

**AND NOW**, this 9th day of November, 2006, upon due consideration of the Annville Defendants' Motion to Dismiss (Doc. No. 18), and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss is **GRANTED in part** as follows:

1. All claims related to the 2001 zoning ordinance amendments are deemed untimely and shall be dismissed.

2. Defendants are entitled to legislative immunity for all actions that are legislative in character.

3. All claims for monetary relief for violations of the Pennsylvania Constitution are dismissed.

**IT IS FURTHER ORDERED** that MFS shall file a more definite statement pursuant to Rule 12(e). The Court will defer ruling on other issues raised in the Defendants' motion.

                                                   s/ Yvette Kane
                                                  Yvette Kane, Chief Judge
                                                  United States District Court
                                                  Middle District of Pennsylvania